UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAVIER GONZALEZ-LOZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 3046 |
| v. | ) | |
| | ) | Judge Kennelly |
| COUNTY OF KANKAKEE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**INDIVIDUAL FEDERAL DEFENDANTS'**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**Introduction**

Plaintiff Javier Gonzalez-Loza's fourth amended complaint has added claims for "excessive force" against Lorne K. Stenson and Marlon Burton in their individual capacities, a current and former United States Deputy Marshal respectively, regarding plaintiff's stairwell fall during his transport out of the Dirksen Courthouse on July 17, 2018. These claims should be dismissed for three reasons. First, the claims are barred by the two-year statute of limitations. Second, the allegations against these two individual federal defendants fail to state a *Bivens* due process claim. The allegations do not present an accepted *Bivens* remedy nor do they warrant an extension of *Bivens*'s scope, and the factual allegations fail to identify *any* act or omission by either of the individual federal defendants, much less do they allege that either committed a constitutional violation sufficient for personal liability. Third, qualified immunity applies to bar this suit. The court should dismiss these claims with prejudice. And one more thing: these newly added *Bivens* claims may be futile anyway, because they will not survive the Federal Tort Claims Act's judgment bar, assuming that the related FTCA case proceeds to judgment.

**Procedural History**

On or about May 17, 2019, *pro se* plaintiff Javier Gonzalez-Loza commenced this civil action against two unknown Kankakee County Sheriffs and three unknown deputy U.S. Marshals under the Federal Tort Claims Act, alleging that plaintiff tripped and fell on stairs on July 17, 2018, as he was leaving the Dirksen Federal Courthouse after a court appearance and that this occurred because the defendants "were negligent by exposing plaintiff to an unnecessary hazardous condition, namely, where plaintiff had to walk down concrete steps in handcuffs, shackles, and a blackbox." Dkt. 4 at 2. The court, on its own motion, among other things, later substituted the United States for the three defendants named as Unknown U.S. Marshals A, B, and C. Dkt. 8.

The United States then moved to dismiss the claim against it, because plaintiff had not filed an administrative claim as required under the FTCA prior to filing the case. Dkt. 17; 28 U.S.C. § 2675(a). The court never ruled on the motion, but plaintiff later—through appointed counsel—filed a first amended complaint, which did not name the United States nor any individual federal defendants. Dkt. 36. The plaintiff subsequently filed a second and a third amended complaint, neither of which stated claims against the United States or any federal defendants. Dkt. 41, 57.

Plaintiff filed his fourth amended complaint on May 17, 2021. Dkt. 73. The new pleading again asserted claims under the FTCA against the United States, but the court has since dismissed those claims. Dkt. 73, 77. Now that plaintiff has exhausted his administrative remedies, he has filed a separate FTCA action against the United States, which been consolidated with this case but has not been served on the United States. *Gonzalez-Loza v. United States*, No. 21 C 3607.

**Factual Allegations**

The fourth amended complaint also asserts claims against U.S. Deputy Marshal Lorne Stenson and former U.S. Deputy Marshal Marlon Burton, as well as John Does 1-10. It uses the

term "Individual USMS Defendants" and defines it as "Defendants United States Marshals Service Deputies Lorne K. Stenson, Marlon Burton, and John Does 1-10." 4th Am. Compl. ¶3. Gonzalez-Loza seeks "relief under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Individual USMS Defendants who are federal employees. The Cruel and Unusual Punishment clause of the Eighth Amendment protects prisoners from the use of excessive physical force, including the use of excessive restraint." 4th Am. Compl. ¶6.

Gonzalez-Loza alleges as follows: He was housed at Jerome Combs Detention Center ("JCDC"), operated by the Kankakee County Sheriff's Office. 4th Am. Compl. ¶¶14-15. He was transported from the JCDC to the Dirksen Courthouse on July 17, 2018, along with other detainees or prisoners. *See id.* ¶¶17, 21. The transport was for the purpose of his federal arraignment. *United States v. Gonzalez-Loza*, No. 18 CR 358, Dkt. 21. He was transported not only by Kankakee County Sheriffs but also by "Individual USMS Defendants." 4th Am. Compl. ¶17. Upon arrival, plaintiff and the others transported entered Dirken Federal Courthouse in a different manner than usual because the usual elevator was out of service. *Id.* ¶¶20-21. Instead, they went "up concrete stairs that led to a freight elevator used to bring the prisoners to the holding cell to wait for court hearings." *Id.* ¶20.

After his arraignment, he and the others again were escorted via the same alternative path, using the freight elevator and concrete stairs, since the usual elevator was still out of service. *Id.* He, was "fully shackled, handcuffed, and black-boxed while being escorted out of the courthouse." *Id.* ¶20-22. The "concrete stairs had a metal edging in defective condition, and lacked walls or other safeguards to buffer against falls by the prisoners, whose shackled feet and handcuffed, black-boxed hands made them vulnerable to any loss of balance as they attempted to negotiate the staircases." *Id.* ¶23. The "dangerous condition of the path through the underground garage of the

3

Dirksen Courthouse and up the staircase to the freight elevator was plainly visible to Defendants Senesac, Bertucci, and Individual USMS Defendants, who were deliberately indifferent to the danger, and did nothing to abate the danger in order to protect the vulnerable prisoners from the obvious and notorious dangers on their way to and from their hearings in the courthouse." *Id.* ¶24.

Then, while walking down the stairs, his ankle shackles got caught on a piece of metal trim protruding from the stair, and he tripped and fell headlong down the concrete stairs, unable to catch himself from falling because he was handcuffed and shackled. *Id.* ¶25. He "screamed in pain" and "heard a cracking sound in his back and felt back and neck pain." *Id.* ¶26. Gonzalez-Loza asked the Sheriffs and Individual USMS Defendants not to pick him up, but he is Spanish-speaking. *Id.* ¶27. He claims that "[o]ne or more Individual USMS Defendants asked Gonzalez-Loza whether he was okay. Gonzalez-Loza said, 'No.' One or more Individual USMS Defendants picked him up anyway, by his arms." *Id.* He "sustained flesh wounds from the ankle shackles as they peeled skin off his ankle during the fall" and "was bruised from his wrist to his elbow for more than two weeks from the fall." *Id.* ¶28. Gonzalez-Loza also claims that "[o]ne or more Individual U.S. Marshals mocked" him. *Id.* ¶29. He concedes that he was provided with immediate medical care at the Dirksen Courthouse, specifically that he "was seen by a nurse, who observed him, gave some first aid, and gave Motrin." *Id.* 30.

Under his cause of action titled "Bivens 8th Amendment Cruel and Unusual Punishment Against Individual U.S. Marshals Deputies Lorne K. Stenson, Marlon Burton, and John Does 1-10," plaintiff alleges that the "Individual USMS Defendants caused excessive force to be used against Gonzalez- Loza by setting in motion the chain of events that lead [*sic*] to his injury on July 17, 2018, including one or more of the following acts:

4

a. During the transit of July 17, 2018, forced Gonzalez-Loza to wear excessive restraints, including "black-boxed" handcuffs in violation of USMS Policy Directive 9.18, leaving him virtually unable to move his arms, any movement causing him physical pain and physical injury, and leaving him unable to hold the railing or otherwise maintain his balance to prevent from falling headlong down the stairs;

b. Forced Gonzalez-Loza to ride in the transit van with excessive restraints, including "black-boxed" handcuffs, without a seat belt;

c. Forced Gonzalez-Loza to walk down cement stairs in the Dirksen building, during which the chain on ankle shackles got caught on a piece of metal trim that was protruding from the stair, making Gonzalez-Loza trip and fall headlong down the stairs;

d. Failed to assist or support Gonzalez-Loza while he was walking down the stairs with excessive restraints;

e. Failed to prevent him from falling headlong down the concrete stairs when he was wearing excessive restraints;

f. Knew Gonzalez-Loza was injured, but forcibly moved him by his arms in a malicious and sadistic manner, causing further harm and injury;

g. Mocked Gonzalez-Loza cruelly, knowing he was suffering; and

h. Refused to alleviate Gonzalez-Loza's suffering caused by the prolonged restraint in handcuffs and excessive restraints." *Id.* ¶121.

Gonzalez-Loza alleges that he suffered various injuries because of the "Individual USMS Defendants'" conduct and seeks to hold Stenson and Burton personally liable for damages. *Id.* ¶¶122-25.

**Argument**

Gonzalez-Loza's belated attempt to seek money damages from two federal officers for his fall on the Dirksen Courthouse stairs should be dismissed. First, these claims are time-barred because they were brought ten months too late to comply with the two-year statute of limitations applicable to *Bivens* claims in Illinois. Even were they not time-barred, he has failed to state a *Bivens* claim against those individuals. The allegations here are not within the accepted scope of the *Bivens* remedy, and no extension of *Bivens* is warranted here, especially where plaintiff has an alternative remedy in tort. Further, even if this were a context in which a *Bivens* remedy had been found, plaintiff failed plausibly to allege that Stenson or Burton committed a due process violation. In any event, even if what he alleges could be viewed as a constitutional violation, which it cannot, qualified immunity would bar these claims.

**I.      Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, which must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007). Well-pled facts are taken as true and viewed in the light most favorable to the plaintiff. *Hatmaker*

*v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Courts should dismiss a case as untimely when the complaint reveals that it was not brought within the statutory period. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). The defense that a claim violates the statute of limitations may be adjudicated on a motion to dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

**II.     The Claims Against U.S. Deputy Marshals Stenson and Burton Are Time-Barred.**

The claims against defendants Stenson and Burton are time-barred because they were filed about ten months after the expiration of the statute of limitation. "*Bivens* actions, like actions under § 1983, are considered as personal injury claims and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred. In Illinois, this kind of personal injury case is governed by a two-year statute of limitations." *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996) (internal case citations omitted); 735 Ill. Comp. Stat. Ann. 5/13-202. That raises the question of when the claim accrued. Claim accrual occurs "when the plaintiff has 'a complete and present cause of action,'" that is, when "the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal case citations omitted).

Here, the claim accrued on July 17, 2018, when Gonzalez-Loza alleges that he knew he was injured from his fall. 4th Am. Compl. ¶¶17-38. The pleading naming Stenson and Burton was filed on May 17, 2021, close to three years later. Dkt. 73. The claims against these individuals do not "relate back" to the filing of the original complaint for timeliness purposes. *Herrera v. Cleveland*, __ F. 4th __, No. 20-2076, 2021 WL 3447681, at *4 (7th Cir. Aug. 6, 2021) (holding amended complaint naming individual defendants, where original complaint named John Does,

does not relate back for timeliness purposes as a "mistake" about parties' identity under Rule 15(c)(1)(C)(ii)); *Delgado-Brunet*, 93 F.3d at 344 (dismissing *Bivens* claims against newly added federal prison officers because they were named outside of the two-year statute of limitation). Therefore, plaintiff's claims against Stenson and Burton are long since time-barred and should be dismissed with prejudice. *Herrera*, 2021 WL 3447681, at *4-5 (reversing district court's denial of motion to dismiss claims against newly added defendants as time-barred); *Molina-Garcia v. Fardon*, 754 F. App'x 475 (7th Cir. 2019) (affirming dismissal of *Bivens* claims against former U.S. Attorney and an Assistant U.S. Attorney as untimely, since they were not filed within two years of accrual); *Porter v. U.S. Gen. Servs. Admin.*, 151 F.3d 1033 (7th Cir. 1998), *amended*, No. 97-4230, 1998 WL 614752 (7th Cir. Aug. 17, 1998) (affirming dismissal of *Bivens* claims that were filed more than two years after they accrued); *Delgado-Brunet*, 93 F.3d at 344.

### III. Plaintiff Failed to State *Bivens* Claims Against U.S. Deputy Marshals Stenson and Burton.

The allegations here, all lumped together against "Individual USMS Defendants," which is defined to include Stenson, Burton and ten John Does, do not pass muster for pleading a constitutional violation under *Bivens* and should be dismissed. First, there is no *Bivens* remedy for the nature of the allegations here. Second, plaintiff failed to plead a Fifth Amendment due process violation by either of the two individual federal defendants, even if a *Bivens* remedy had been recognized in this context.

#### A. No *Bivens* Remedy Is Available.

As an initial matter, there is no *Bivens* cause of action for what plaintiff alleges. The Supreme Court in *Bivens* recognized an implied cause of action to remedy a constitutional violation—specifically an unreasonable search and seizure in violation of the Fourth Amendment. Subsequently, the Court recognized two other contexts in which it found an implied cause of action

8

to remedy a constitutional violation. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017). Those were causes of action for a Fifth Amendment due process violation for gender discrimination, in *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment violation where a prisoner alleged failure to provide adequate medical treatment, in *Carlson v. Green*, 446 U.S. 14 (1980). *Abbasi*, 137 S. Ct. at 1854-55. Since that time, there has been a "notable change in the Court's approach to recognizing implied causes of action," such that "the Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity." *Id.* at 1857. Indeed, the Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

The allegations against the individual federal defendants here do not fit any of those three accepted *Bivens* contexts. Gonzalez-Loza seeks to bring Eighth Amendment claims against the individual federal defendants, but because he was a pretrial detainee not a convicted prisoner at the time of his fall, the relevant provision is the Fifth Amendment right to due process. *Bell v. Wolfish*, 441 U.S. 520, 561 (1979) (analyzing pretrial detainees' complaints regarding confinement issues under the Due process Clause of the Fifth Amendment); *United States v. Gonzalez-Loza*, No. 18 Cr 358, Dkt. 21. A claim that U.S. Deputy Marshals violated a pretrial detainee's rights under the Fifth Amendment due process clause by how they failed to use due care when they escorted him down the stairs would require an extension of the *Bivens* remedy. Indeed, the Supreme Court has held that even allegations of abuse of pretrial detainees would be a new *Bivens* claim, *Abbasi*, 137 S. Ct. at 1864-65 (2017) (claim that warden violated Fifth Amendment's substantive due process component by allowing prison guards to abuse aliens detained following September 11, 2001 terrorist attacks would present a new *Bivens* context), as would a detainee's claims complaining of the policies controlling his conditions of confinement, *id.* at 1858-60.

9

In addition, the Supreme Court has rejected extending the *Bivens* remedy to a plaintiff's claim against individual defendants who refused to allow him to use the elevator in his halfway house, forcing him to use stairs that he claims were contraindicated because of medical issues, resulting in him falling and having a heart attack on the stairs. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 64, 74 (2001). Although plaintiff in *Malesko* was not handcuffed at the time, the allegations similarly—when viewed for their facts and not conclusory language—were those of a tort, which further counseled against extending the *Bivens* remedy. *Id.* at 73-74.

Therefore, Gonzalez-Loza has no cause of action against U.S. Deputy Marshals Stenson and Burton, and the claims against them should be dismissed with prejudice.

### B. Plaintiff Failed to Plead a Due Process Violation.

Gonzalez-Loza makes a handful of conclusory allegations against "Individual USMS Defendants," which is defined to include Stenson and Burton and ten unidentified people. 4th Am. Compl. ¶¶3, 6, 24, 27, 29. Those allegations fail to specify what either Stenson or Burton themselves did in connection with the alleged events here. Therefore, plaintiff fails to state a claim against either of the individual federal defendants. But even if the lumped allegations were attributed to each of them individually, they fail to amount to a Fifth Amendment due process violation. These claims should be dismissed.

First, "individual government officials 'cannot be held liable' in a *Bivens* suit 'unless they themselves acted [unconstitutionally].'" *Wood v. Moss*, 572 U.S. 744, 763–64 (2014) (quoting *Iqbal*, 556 U.S. at 683). What plaintiff has done here—lump together a category of officers based on their employer and paint them with a broad brush—is not appropriate or sufficient when bringing Bivens claims. *Bivens* is not designed to hold officers responsible for acts of their subordinates, much less their colleagues. *Abbasi*, 137 S. Ct. at 1860 (2017); *see also Iqbal*, 556

10

U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"). These individual capacity claims assert individual liability, which means they seek money from these federal employees personally. These officers cannot be dragged through a litigation towards that end based purely on this improper type of vague group pleading. *Id.*

Second, what Gonzalez-Loza alleges the "Individual USMS Defendants" to have done does not amount to a due process violation. The allegations sound in tort, and indeed he has sued the United States under the Federal Tort Claims Act "by reason of the same subject matter," such that the FTCA's judgment bar, 28 U.S.C. § 2676, will preclude recovery in this case against the individual defendants regardless of whose favor judgment is entered in the FTCA case against the United States. *Brownback v. King*, 141 S. Ct. 740, 746 (2021); *Manning v. United States*, 546 F.3d 430 (7th Cir. 2008).

Despite this, Gonzalez-Loza purports to dress up his tort claim and accuse Stenson and Burton (and John Does 1-10) of "excessive force" under the Eighth Amendment. 4th Am. Compl. ¶121. Although he now is a convicted prisoner, his Eighth Amendment rights are not at issue here. *See United States v. Gonzalez-Loza*, No. 18 CR 358, Dkt. 34. At the time of his fall on July 17, 2018, he was a pretrial detainee, *id.*, Dkt. 21, so it is instead his Fifth Amendment due process right at issue, and plaintiff has not plausibly alleged a violation of his due process rights.

To succeed on such a claim, a pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the

11

officer knew at the time[,]" taking into count all relevant considerations. *Id.* However, here the allegations are so deficient that the court need not even reach that test.

Even if Gonzalez-Loza had made every allegation that he has levied against the "Individual USMS Defendants" instead specifically against each of the two named individual federal defendants, those allegations would not amount to a claim of constitutionally excessive force, because he has not alleged that Stenson or Burton "purposely or knowing used [force] against him." *Kingsley*, 576 U.S. at 396-97. Indeed, a claim of excessive force must allege "'*some* force,' some 'physically abusive governmental conduct,' some 'physical force,' applied" to the plaintiff. *Townsel v. Jamerson*, 240 F. Supp. 3d 894, 903 (N.D. Ill. 2017) (emphasis in original) (quoting *Morales–Placencia v. City of Chicago*, No. 08 C 5365, 2011 WL 1542964, at *2 (N.D. Ill. Apr. 21, 2011) (quoting *McNair v. Coffey,* 279 F.3d 463, 467 (7th Cir. 2002)) (holding allegation that officers brandished firearms during a search of the plaintiff's home was, without more, insufficient to state a claim).

Ignoring conclusory language and focusing on the facts, Gonzalez-Loza alleges that some of a group of twelve U.S. Marshals (including the two named individual federal defendants and ten John Does), as well as certain Kankakee Sheriffs, did not prevent him from falling in a stairwell that had not caused anyone any injury on the way into the courthouse through the exact same pathway that day. Then—after the fall—some of that group promptly picked him up when he said he was not all right and got him urgent medical attention. This does not even meet the baseline requirement that there was purposeful and knowing "force" used against plaintiff. *Kingsley*, 576 U.S. at 396-97. And if it somehow was sufficient "force," the allegations amount to no more than negligence, which is "categorically beneath the threshold of constitutional due process." *Kingsley*

*v. Hendrickson*, 576 U.S. 389 (2015) (internal quotation marks omitted; quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

Furthermore, Gonzalez-Loza complains about the shackles and the "black-box" handcuffs he wore. Those allegations fail to state a claim against Stenson and Burton for two reasons. First, there is no allegation that Stenson or Burton had any role in putting plaintiff in those restraints, so those allegations cannot state a claim against them. *Townsel*, 240 F. Supp. 3d at 903-904 (holding *Bivens* excessive force allegations that plaintiff "was handcuffed," "shackled," and "chained to a wall" fail as matter of law because, among other reasons, "they fail to identify which Defendant handcuffed, shackled, or chained him to the wall" and "does not allege that he communicated any injury" related to the restraints to defendants) (citing *Wood*, 134 S. Ct. at 2070).

Second, even if he had alleged Stenson or Burton *personally* had anything to do with his restraints, Gonzalez-Loza does not allege how the handcuffs or shackles amounted to excessive force, other than that they prevented him from catching himself when he fell. That does not render their usage excessive. *Townsel*, 240 F. Supp. 3d at 903 (*Bivens* claim also failed as a matter of law because plaintiff "merely alleges that handcuffs and shackles were employed in his detention but fails to articulate how their use constituted excessive force or was otherwise unreasonable"). Although "the Seventh Circuit has recognized excessive force claims for the use of handcuffs, it has done so only when it is objectively clear that the handcuffs would injure or harm the" plaintiff. *Id.* (citing *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009)); *see also Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (concluding that the arresting officer did not act unreasonably when he fastened the plaintiff's handcuffs too tightly, and the plaintiff, whose injuries did not require medical care, complained only once about his handcuffs "without elaborating on any injury, numbness, or degree of pain"). No such facts are alleged here.

Further, to the extent the restraint-related allegations complain of the practices and policies of the United States Marshals Service used when securely transporting detainees through Dirksen Courthouse, "a *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860 (quoting *Malesko*, 534 U.S. at 74)) (no *Bivens* claim where challenging detention policy); *see also Wood*, 572 U.S. at 763–64 (declining to "infer from alleged instances of misconduct on the part of particular agents an unwritten policy of the Secret Service to suppress disfavored expression, and then to attribute that supposed policy to all field-level operatives").

Finally, Gonzalez-Loza's conclusory allegation that "[o]ne or more Individual U.S. Marshals mocked" him does not allege *force* by anyone, much less excessive force, and does not identify Stenson or Burton in any event. 4th Am. Compl. ¶29. Therefore, it cannot sustain a claim of excessive force against anyone, much less these officers. *Chriswell v. O'Brien*, 570 Fed. Appx. 617 (7th Cir. 2014) (holding that an officer's statement that "black equals crack" "was (if made) disgraceful and reprehensible, but it does not amount to an unreasonable use of force"); *Mannix v. Humer*, No. 10 C 5063, 2011 WL 116888, at *3 (N.D. Ill. Jan. 11, 2011) (allegations that officers "spoke harshly" to plaintiff were not enough to make out a plausible claim of excessive force); *Townsel*, 240 F. Supp. 3d at 904 ("Because Plaintiff's allegations regarding being yelled and cursed at involve no physical force, they cannot state a claim for excessive force and are dismissed.").

### IV. Qualified Immunity Bars the Claims Against the Individual Federal Defendants.

Even if plaintiff *had* stated a claim for excessive force against Stenson or Burton, the doctrine of qualified immunity should bar the claims against them from proceeding. Qualified immunity protects federal officers from suit if their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). In determining whether an officer is entitled to qualified

immunity, the court asks: (1) whether the officer violated a statutory or constitutional right; and (2) whether the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The court has discretion to choose which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An "officer enjoys qualified immunity and is not liable for excessive force unless he has violated a 'clearly established' right, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Kingsley*, 576 U.S. at 400 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Here, it was not clearly established in 2018 (nor is it clearly established today) that a U.S. Marshal violates the Fifth Amendment by failing to anticipate a detainee's fall and then picking the detainee up to get them medical care (probably because these things do not violate the Fifth Amendment in the first place). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and it protects Stenson and Burton from suit here.

## Conclusion

For the foregoing reasons, the claims against Lorne Stenson and Marlon Burton should be dismissed with prejudice.

    Respectfully submitted,

    JOHN R. LAUSCH, Jr.
    United States Attorney

    By: s/ Sarah J. North
        SARAH J. NORTH
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-1413
        sarah.north@usdoj.gov