UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAVIER GONZALEZ-LOZA, )  | | |
|     Plaintiff, ) | | Case No. 19-cv-03046 |
| ) | | |
| v. ) | | |
| COUNTY OF KANKAKEE, et al., ) | | Hon. Judge Kennelly |
|     Defendants ) | | |

**MEMORANDUM OF PLAINTIFF JAVIER GONZALEZ-LOZA IN
OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**

Plaintiff Javier Gonzalez-Loza ("Plaintiff"), through counsel, submits this Memorandum in opposition to the Motion to Dismiss of Individual Federal Defendants Lorne K. Stenson and Marlon Burton ("Defendants") (Dkt. #94). Defendants move to dismiss Count VII of Plaintiff's complaint, which assert due process violations pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). The Motion to Dismiss should be denied in substance, with leave to replead to correct the erroneous assertion of Plaintiff's status, a pretrial detainee at the time of the incidents in question, and applicable legal standards.

**FACTS**

After his arrest on drug charges, on or about February 7, 2019, Plaintiff Javier Gonazalez-Loza pled guilty to sale of a controlled substance (21 U.S.C. Section 841(a)(1)), and was sentenced to ten years in federal prison. *U.S. v. Javier Gonzalez-Loza, 18-CR-00358, Dkt. #34*. From June 13, 2018, until February 21, 2019, under agreement between the United States, County of Kankakee, and Kankakee County Sheriff's Office, Plaintiff was housed at Jerome Combs Detention Center ("JCDC"). *Javier Gonzalez-Loza v. Kankakee Cty. et al.*, *19-CV-03046*, Dkt. #73, ¶¶1, 14. He was transferred to the Metropolitan Correctional Center in Chicago, and from July 2020 to July 2021, he was housed at Great Plains Correctional Facility in Hinton, Oklahoma,

1

then at FCI Bennettsville in South Carolina, where he is currently held. Dkt. # 98.

On or about July 17, 2018, Plaintiff was transported from JCDC to the Dirksen Courthouse in Chicago for his arraignment. *18-CR-00358*, Dkt. #19 and #21. He was transported by Defendants Kankakee County Sheriffs Bertucci and Senesac, as well as Defendants USMS Deputies Stenson and Burton. *19-CV-03046*, Dkt. #17. Although he was not designated a flight risk, Defendants placed his ankles in shackles, and his handcuffs were black-boxed to his waist; Defendants were aware that he was so restrained. *Id.*, ¶19. Following the hearing, Defendants forced Plaintiff to walk down concrete stairs to exit the courthouse because the elevator was out of service. *Id.*, ¶20. The stairs had a metal edging in defective condition and lacked walls or other safeguards to prevent shackled and handcuffed prisoners from falling. *Id.* ¶23. During his exit, Plaintiff tripped on the hazardous metal edging and fell headlong down the concrete stairs. *Id*. ¶25. Screaming in pain, Plaintiff heard a cracking sound in his back and felt pain in his back and neck. *Id.* ¶26. He asked Defendants Stenson and Burton not to move him, but, mocking him, they picked him up anyway. *Id*. ¶¶27, 29. Plaintiff sustained serious wounds due to the restraints. The handcuffs were bent, and he had flesh wounds on his ankles from the shackles where the skin peeled off during the fall. *Id*. ¶28. Plaintiff was bruised from his wrist to his elbow for more than two weeks after the fall. *Id*. Defendants did not take Plaintiff to the hospital and refused to render any assistance other than taking him to the nurse for Motrin at the Dirksen Courthouse. *Id.* ¶30. Instead, they transported him back to JCDC, even though he became dizzy and began vomiting. *Id.* ¶32. At JCDC, Plaintiff received only minimal first-aid. *Id*. ¶33. Although he complained of pain, stiffness, and other symptoms, Defendants at JCDC merely gave him analgesics and told him to move around and stretch. *Id*. ¶33. Even after x-rays showed abnormalities in his cervical and thoracic spike, Defendants prescribed only basic physical therapy. *Id.* ¶34. Nor did they alter his

course of treatment after he was transferred to Great Plains. *Id*. ¶¶37-38. His inadequate treatment exacerbated his condition, intensified his pain and disability, and made it difficult to enjoy normal life experiences, walking, lying down, or other daily activities. *Id.* ¶36.

Count VII—the only claim at issue in this Response—includes allegations that Individual USMS Defendants Stenson and Burton caused excessive force to be used against Plaintiff during his transport to the Dirksen Building, when they used black-box restraints on Plaintiff, who was also handcuffed and ankle-shackled. *Id.*, ¶¶120-127. This practice of black-boxing violated USMS policy and caused Plaintiff to fall when his ankles caught on the defective stairs, rendering him unable to use the railing or wall to catch himself. *Id*. Not only did Defendants Stenson and Burton fail to intervene to prevent Plaintiff from injury, they turned a blind eye to him as he lay at the bottom of the staircase, crying out in pain. *Id*. Instead, they mocked him and picked him up, although he had asked them not to move him because he was not okay. *Id*. Moreover, Defendants Stenson and Burton proceeded to transport him back to JCDC rather than take him to the hospital although they were informed by other transportees that Plaintiff was clearly ill, dizzy, and vomiting. *Id*. Defendants' malicious and sadistic actions caused severe injuries to Plaintiff, including acute and chronic pain in multiple sites, concussion, and abrasions and contusions on his skin. *Id*. Today, he continues to experience physical, mental, and emotional injuries, including stiffness, dizziness, chronic severe headaches, difficulty moving or lying down, loss of enjoyment of life, emotional distress, and mental anguish. *Id*.

On July 7, 2021, Plaintiff filed a new case against Defendant U.S., which included claims under the Federal Tort Claims Act. *Gonzalez-Loza v. United States, 21-CV-3607*. The facts underlying the FTCA claim are that the Defendant United States failed to maintain federal premises, failed to supervise the transfer of Plaintiff while he was in custody, and failed to provide

adequate medical care for his resultant injuries. *Id.*, Dkt. #1. On July 26, 2021, this Court consolidated 21-CV-3607 and 19-CV-3046. Dkt. #88. This Court presides over both cases.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In construing a complaint, however, courts "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382 (7th Cir. 2016). To defeat a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit." *Figueroa v. City of Chicago*, No. 97-C-8861 (N.D. Ill. Mar. 11, 1999) (citation omitted).

## ARGUMENT

I. **PLAINTIFF STATES AN ACTIONABLE CLAIM UNDER *BIVENS***

In Count VII of his Fourth Amended Complaint, Plaintiff seeks relief for constitutional violations, in accordance with *Bivens,* against the Individual USMS Defendants, Lorne K. Stenson and Marlon Burton. In *Bivens*, the Supreme Court held that violation of the Fourth Amendment by a federal agent acting under color of federal authority creates a cause of action for damages caused by the agent's unconstitutional conduct. *Id*.

The Court subsequently extended this cause of action to violations of the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228 (1979) (congressional staffer's Fifth Amendment claim of dismissal based on sex). As many courts and leading commentators note, nothing in *Davis* suggests

the remedy is confined to sex discrimination in the workplace. *See, e.g., Parsons v. Aguirre*, 123 F.R.D. 293 (N.D. Ill. 1988) (demonstrators' *Bivens* claim against members of Federal Protection Service for excessive force, false arrest, false imprisonment, and malicious prosecution under the Fourth and Fifth Amendments); *Bistrian v. Levi*, 912 3d 79, 88 (3d Cir. 2018) (pretrial detainee's *Bivens* claim under Fifth Amendment against prison officials for failure to protect from harm); 13D C. Wright et al., *Federal Practice and Procedure* § 3573.2, at 596 n.64 (3d ed. 2008) ("right of action for damages can be implied from the equal protection component of the Due Process Clause of the Fifth Amendment.").

**A.     Plaintiff's allegations of constitutional violations are remediable under *Bivens*.**

Individual Defendants point out that Plaintiff was a pretrial detainee. Dkt. #94 p. 9, *citing Bell v. Wolfish*, 441 U.S. 520 (1979) (pretrial detainees' rights are established by the Due Process Clause of the Fifth Amendment). Plaintiff's counsel mistakenly believed he had been sentenced before the accident, so that the Eighth Amendment controlled his claims against the state officials (Counts I and II), and the *Bivens* claim against the federal officials (Count VII). *See United States v. Gonzalez-Loza*, No. 18 Cr 358, Dkt. #21.

Correspondingly, Plaintiff respectfully requests leave to correct his pleadings. His pretrial status means his rights were entitled to a higher level of protection than a convicted person's. *City of Revere v. Mass.Gen.Hosp.*, 463 U.S. 239, 244 (1983) (due process rights of an unconvicted person "are at least as great as the Eighth Amendment protections available to a convicted prisoner"); *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) ("pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously or sadistically'"). He now alleges violations of his pretrial rights by Defendants' use of excessive restraints, forcing Plaintiff to walk in those restraints down a dangerous stairway, failing to protect against foreseeable injury,

5

and malicious treatment after his injury. (#73, ¶¶ 17-32, 120-127) Defendants correctly state that the Fifth Amendment applies. The upshot is that Plaintiff has a *Bivens* remedy.

### B. Plaintiff respectfully requests leave to replead.

"Where the harm is the same, where this Court has held that both the Fifth and Eighth Amendments give rise to *Bivens'* remedies, and where the only difference in constitutional scope consists of a circumstance (the absence of a conviction) that makes the violation here worse, it cannot be maintained that the difference between the use of the two Amendments is 'fundamental.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1877-78 (2017).

To correct Plaintiff's erroneous pleading, he respectfully requests leave to replead Count VII as a Fifth Amendment *Bivens* claim against Defendants Individual U.S. Marshal Service deputies Lorne K. Stenson, Marlon Burton, and John Does 1-10. See *Davis v. Passman*, 442 U.S. 228, 245 (1979) (judiciary may vindicate plaintiff's Fifth Amendment rights, and *Bivens* provides damages remedy). Similarly, Plaintiff respectfully requests leave to replead the two §1983 claims in Count I against Defendants Kankakee County, Kankakee County Sheriff's Office, and Defendants Senesac, Bertucci, and Dr. Long; and Count II against Defendants Downey, Dr. Long, and Unnamed Agents of JCDC. Those two counts were mistakenly alleged as violations of the Eighth Amendment, rather his due process rights as a pretrial detainee, where the state officials charged with his care caused him to be injured, and state prison medical staff denied him adequate medical care. *See Hernandez v. Hain*, 19 C 5147 (N.D. Ill. Aug. 16, 2021) (Kennelly, J.) (Fourteenth Amendment applies to pretrial detainee's Section 1983 claim of inadequate medical care against state prison doctor).

### II. PLAINTIFF SUFFICIENTLY ALLEGES A CONSTITUTIONAL CLAIM.

Arguing that Count VII exceeds the scope of *Bivens* (# 94 at 8-10), Defendants would

6

restrict *Bivens* more narrowly than contemplated by the Supreme Court and the Seventh Circuit. *See, e.g. Parsons v. Aguirre*, 123 F.R.D. 293 (N.D. Ill. 1988) (Fifth Amendment *Bivens* remedy applies in contexts of excessive force, false arrest, false imprisonment, and malicious prosecution). While the Court has held that federal courts should exercise caution when extending *Bivens* to other contexts, *see, e.g., Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017) (*citing Davis* and *Carlson*, *supra*, as contexts where *Bivens* was permissibly implied as a constitutional remedy), subsequent *Bivens* jurisprudence encompasses the rights violated in this case, which do not differ in a "meaningful way." *Id*. at 1859.

The Seventh Circuit thus allows *Bivens* claims under the Fifth Amendment for violations of procedural and substantive due process. *See, e.g. Hammond v. Kunard*, 148 F.3d 692, 694-95 (7th Cir.1998) (law enforcement officers fabricated evidence for trial); *Alejo v. Heller*, 328 F.3d 930 (7th Cir.2003) (upholding *Bivens* national origin claim against prison officer for strip-search); *Hoosier Bancorp of Ind. v. Rasmussen*, 90 F.3d 180 (7th Cir.1996) (wrongful decision by banking regulators resulting in bank's liquidation was unconstitutional under 5th Am. taking clause); *Engel v. Buchan*, 710 F.3d 698, 702 (7th Cir. 2013) (*Bivens* applies to *Brady* violations as violatng substantive and procedural due process); *Manning v. Miller*, 355 F.3d 102 (7th Cir. 2004) (same). These decisions rest on *Bivens's* premise that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bivens* at 392 (*quoting Bell v. Hood,* 327 U.S. 678, 684 (1946)).

**A.     Plaintiff's Complaint sufficiently specifies a plausible claim for violation of his constitutional rights**

As a pretrial detainee, Plaintiff's rights arose under the Due Process clause. *Kingsley, supra.* As a federal prisoner suing Defendant federal employees, his claims are brought under *Bivens*. The standard for Due Process claims under the 14th Amendment applies to *Bivens* actions,

7

including, as alleged here, claims of unauthorized or excessive force, failure to protect, or inadequate medical care. S*ee, e.g.*, *McGaskey v. Fayette Cnty. Jail*, No. 16-cv-00126-JPG, at *4 (S.D. Ill. Mar. 1, 2016)("The distinction makes little difference" between §1983 and *Bivens*, and "Courts often rely on case law addressing claims in both contexts.").

Claims by pretrial detainees for Due Process violations—whether brought under §1983 or Bivens—are subject only to the objective unreasonableness standard of *Kingsley, supra. Kingsley* held that to prove excessive force, a pretrial detainee need not show that the officers were *subjectively* aware that their use of force was unreasonable, only that the officers' use of that force was *objectively* unreasonable. *Id*. Objective reasonableness is fact specific, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. at 2473. Considering how the *Kingsley* plaintiff was handcuffed and tasered during pretrial detention, merely for refusing to allow officers to search for papers in his cell, the Court found that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* at 2478. "[S]uch punishment can consist of actions taken with an 'expressed intent to punish'" or absent which, "a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* at 2473 (citation omitted).

Defendants cite *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), and *Townsel v. Jamerson*, 240 F. Supp. 3d 894, 903 (N.D. Ill. 2017), as authority that handcuffing is not excessive force. The Seventh Circuit, however, has recognized excessive force claims for the use of handcuffs when it is objectively clear that the handcuffs would injure or harm the arrestee. *See, e.g., Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) (denying summary judgment; evidence that

8

arresting officers handcuffed plaintiff too tightly); *Herzog v. Vill. of Winnetka,* 309 F.3d 1041, 1042–43 (7th Cir.2002) (unconstitutional excessive force and battery where law enforcement officers excessively tightened plaintiff's handcuffs and chipped her tooth during breathalyzer). The excessive force (or freedom from unreasonable restraints) cases rely upon the *Kingsley* standard for determining substantive due process rights. They hold that "the use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve." *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000); *see also Davis v. Wessel*, 792 F.3d 793, 800 (7th Cir. 2015) (officers violated clearly established law by refusing to remove plaintiff's hand restraints to humiliate and ridicule him); *Murphy v. Walker*, 51 F.3d 714, 717-18 (7th Cir.1995)("Shackling one to the floor is an extreme measure, and several courts have stated that bodily restraints may not be used as punishment; they may only be used on violent inmates who pose a threat to others or suicidal inmates who pose a threat to themselves.").

In *May*, the Seventh Circuit observed,

> "shackling all hospital detainees reduces the risk of a breach of security and thus furthers a legitimate non-punitive government purpose, …. But, it is hard to see how shackling an AIDS patient to his or her bed around the clock, despite the continuous presence of a guard, is an appropriate policy for carrying out this purpose. Such a policy is plainly excessive in the absence of any indication that the detainee poses some sort of security risk."

*May,* 226 F.3d at 884; *citing Wolfish*, 441 U.S. at 539 n. 20

> ("[L]oading a detainee with chains and shackles and throwing him in a dungeon may ensure his presence at trial and preserve the security of the institution. But it would be difficult to conceive of a situation where conditions so harsh, employed to achieve objectives that could be accomplished in so many alternative and less harsh methods, would not support a conclusion that the purpose for which they were imposed was to punish.") Nor, as *Wolfish* made clear, deterrence a legitimate nonpunitive governmental objective. *Id*.

9

That reasoning applies here. Unlike *Tibbs* and *Townsel*, Plaintiff identifies individual Defendants as responsible for the improper and prolonged use of restraints that foreseeably led to his serious injuries, using restraints intended only for high-risk prisoners, including "black-boxed" handcuffs that were unauthorized under USMS regulations. Dkt. #73, ¶¶120-127; *Tibbs*, 469 F.3d at 666. *Townsel*, 240 F. Supp. 3d at 903. Defendants' unauthorized use of such restraints, lacking a legitimate penological goal, constituted excessive force. *Id.*, ¶121. This rose to the level of impermissible punishment, proximately causing injury, when Defendants recklessly forced him to walk down dangerous steps, in a defective state, in the unauthorized restraints—without assistance.

Defendants urge that mockery of a prisoner does not constitute actionable excessive force. (#94 at 14, *citing Chriswell v. O'Brien*, 570 Fed. Appx. 617 (7th Cir. 2014) and *Mannix v. Humer*, No. 10 C 5063, 2011 WL 116888, at *3 (N.D. Ill. Jan. 11, 2011)). Defendants misconstrue the significance of these facts, which in this case reflect a state of mind showing contemptuous disregard for Plaintiff's complaints of pain, his predictable fall on a dangerous new transit route through the courthouse, and his need for treatment consistent with standards of care of persons presenting with possible spinal injury. It shows, in other words, *deliberate indifference* in this failure to protect case. *Bistrian v. Levi,* 912 F. 3d 79, 90-91 (3d Cir. 2018) (deliberate indifference is "the legal standard to assess a *Bivens* claim, the standard by which all subsequent prisoner safety claims have been assessed." *Citing Farmer v. Brennan,* 511 U.S. 825, 932-849 (1994).) Here, moreover, as a pretrial detainee, "the correct standard of review … is not deliberate indifference, but rather the somewhat less stringent standard of objective reasonableness." *Hernandez v. Hain,* 19 C 5147 (N.D. Ill. Aug. 16, 2021) at 9 (Kennelly, J.) (citation omitted). He need only "establish that the 'defendants acted purposefully, knowingly, or perhaps … recklessly when they considered the consequences of their handling" of the situation. *Id.* at 10. "He is not required to prove that the

defendants had an intent to cause harm…" *Id.*

Defendants cite *Chriswell v. O'Brien*, 570 F. App'x 617 (7th Cir. 2014), which was nonprecedential, but to the extent the intended to cite to the lower court's decision, *Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *9 (N.D. Ill. Nov. 4, 2013), the excessive force claims were analyzed under the Fourth, not the Fifth, Amendment framework, and were brought under § 1983, not *Bivens*. This was also so in Defendants' authority of *Mannix v.Hummer,* 10 C 5063, 2011 WL 116888, at * 1 (N.D. Ill. Jan. 11, 2011). Similarly, the plaintiff in *Townsel v. Jamerson*, 240 F. Supp. 3d 894, 904 (N.D. Ill. 2017), also brought *Bivens* claims for excessive force under the Fourth rather than Fifth Amendment, and those allegations did not include "some force," unlike this case. Dkt. #73, ¶121.Importantly, the District Court in *Chriswell* stated that the racially derogatory language was not "devoid of legal significance"; "such language is strong evidence of racial animus, an essential element of any equal protection claim". *Id.* at *18-19, *citing DeWalt v. Carter*, 224 F.3d 607, 612 n.3 (7th Cir.2000)(cleaned up).

The Seventh Circuit does not require allegations of injury in Fourth Amendment excessive force claims. *See e.g.,Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("although evidence of injury can throw some light on the question whether the officers used excessive force, there is no requirement that plaintiffs show any particular degree of injury."); *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) (" an excessive force claim does not require any particular degree of injury."). Plaintiff does allege significant injury from unreasonable physical force,  sufficient to survive Defendants' 12(b)(6) challenge. *See e.g. Bernal v. Johnson*, No. 13 CV 06726 *8 (N.D. Ill. Sep. 25, 2014) (allegation that an officer "directly sprayed Plaintiffs with pepper spray" sufficient to survive motion to dismiss). A number of cases "consider any nontrivial punishment of a person not yet convicted a sufficient deprivation of liberty to entitle him to due process." *Champ v.*

*Forcum*, No. 19-cv-26-SMY, at *6 (S.D. Ill. Mar. 18, 2019) (holding pretrial detainee entitled to due process before being denied participation in dining room, gym, birthday parties, and other unit activities); *Holly v. Woolfolk*, 415 F.3d 678, 679-80 (7th Cir. 2005) (collecting cases)).

### B. No Adequate Alternative Remedies Are Available.

The goal of *Bivens* is to compensate victims harmed by federal officials when there is no statutory provision for such compensation. Here, no state or federal laws compensate plaintiffs injured during pretrial detention; Defendants are incorrect that the FTCA is an adequate alternative. Given the distinction in facts and law comprising Plaintiff's parallel claims of *Bivens* and the FTCA, Defendants' interpretation would produce unfair results by precluding potentially meritorious claims if Plaintiff's FTCA claims failed for unrelated reasons.

While Plaintiff seeks to hold the United States accountable for tort claims under the FTCA in his parallel case, *Gonzalez-Loza v. United States*, 21-CV-03607, those claims include torts for premises liability for the federal courthouse, the widespread practice of using excessive restraints on pretrial detainees, and the actions of its employees following Plaintiff's injury on the dangerous staircase. In contrast, Plaintiff's constitutional claims in this action seek compensatory and punitive damages for the individual Defendants' reckless actions in escorting Plaintiff on a dangerous transit route while excessively restrained. They also failed to honor his urgent request not to move him. but picked him up anyway, and mocked him.

Not only the facts, but also the legal theories differ between the instant action and Plaintiff's FTCA action. *Sterling v. U.S.*, 85 F.3d 1225, 1227 (7th Cir. 1996). For example, for his *Bivens* claim, he need only show only that Defendants' behavior was objectively unreasonable, while the state torts underlying his FTCA claims require subjective bad faith. *Brownback v. King*, 141 S. Ct. 740, 751-52 (2021) (Sotomayor, J., concurring). Defendants' view would produce unfair results

12

by precluding meritorious claims if Plaintiff's FTCA claims failed for unrelated reasons.

Defendants also contend that even if there is an actionable *Bivens* claim, the FTCA's judgment bar would nullify Plaintiff's case against the United States. (#94, at 11) Yet the FTCA relevantly provides, "The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. A plaintiff need not rebut procedural defenses that require a judgment on the merits before they apply. The Seventh Circuit has considered this issue, and has permitted plaintiffs to proceed on a *Bivens* claims after their FTCA claims failed at summary judgment. *See*, *e.g., Sterling v. U.S.*, 85 F.3d 1225, 1227 (7th Cir. 1996) (judgment in a prior *Bivens* action did not preclude a later FTCA suit against the U.S.); s*ee also Bagola v. Kindt*, 131 F.3d 632, 638 (7th Cir. 1997) (Congress did not intend FTCA to replace *Bivens*).

### C. Special Factors Analysis Implies Remedy under *Bivens*.

Citing "special factors", Defendants argue against extending the *Bivens* remedy to this case. #94, at 8-10. But like *Bivens*, the "present case involves no special factors counselling hesitation in the absence of affirmative action by Congress". *Bivens,* 403 U.S. at 396. As the Court expl ained, those special factors are "keyed to concerns about the special status of the federal defendants or sensitivity to the nature of the governmental activity involved." *Engel v. Buchan*, 710 F.3d 698, 703 (7th Cir. 2013). *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (no *Bivens* action for military officers alleging unconstitutional actions by superior officers where Congress had designed two systems of justice, one for civilians and one for military personnel. *Id.* at 298-305); *U.S. v. Stanley*, 483 U.S. 669, 671–72, 683–84 (1987) (no *Bivens* suit for serviceman subject to Army's secret medical experiments; special factors counsel against implicating courts

13

in military activities). Moreover, in declining to extend *Bivens,* some courts cited a "carefully calibrated administrative regime" better suited to handle a complaint than the Judiciary. *See, e.g. Schweiker v. Chilicky*, 487 U.S. 412, 417, 419–20, 428–29 (1988) (no *Bivens* action for alleged Due Process violations in Social Security administrative process for disability benefits).

Individual Defendants cite *Correctional Services Corp*. v. *Malesko*, 534 U. S. 61 (2001), and *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), as cases in which the Court declined to extend *Bivens*. (#94, at 9-10) *Malesko* was a suit against a private prison, not a federal officer. Nor is this case at all like *Abbesi*, an action by a class of non-citizens arrested on suspicion of terrorist-related activities, deemed *post facto* to have violated immigration laws. (#94, pp. 9-10) The Court cited factors, inapplicable here, such as interfering with sensitive Executive Branch functions and national security issues. *Abbasi*, 137 S. Ct. at 1861. There are no such circumstances here.

## III. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Citing the inapposite case of *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018), Individual Federal Defendants claim qualified immunity for actions that resulted in severe injury to Plaintiff. #94, at 14-15. *Kisela* concerned a split-second decision by a police officer to fire his gun at a criminal suspect. Here, Plaintiff, a pretrial detainee, alleges excessive force, pursuant to the Fifth Amendment, where he was coerced to walk a hazardous transit route to and from his arraignment hearing, virtually incapacitated by restraints, without supports, and without assistance from the Individual Defendants acting as his escorts, and charged with maintaining the safety of the premises for safe use by detainees. *See Smith v. United States,* 14-cv-4009 (7th Cir., 2017).

Individual Defendants unavailingly cite *Townsel, supra,* a Fourth Amendment excessive force claim by a postal worker accused of possessing a firearm. (#94 at 13) It in fact supports Plaintiff, who does not allege that his restraints were unlawful *per se.* Regardless of who black-

14

boxed Plaintiff, it was to be used for prisoners presenting a flight risk; Individual Defendants must be charged with knowledge of its wrongful use, in violation of federal regulations. When, moreover, Individual Defendants realized that the regular transit route was inaccessible, it was incumbent on them to ensure safe passage and access to court facilities. Unlike the elevator ordinarily used for transit, which safely enclosed detainees as they accessed and returned from the court, the staircase was in a dangerous condition, yet Individual Defendants forced Plaintiff to use it. Nor is this a case with no resultant injury. Plaintiff's shackles got caught, there were no supports, he had no means to recover his balance, Individual Defendants gave him no assistance, and he fell headlong, crying in pan as he dangled from the defective trim on the stair.

The right to be free from excessive force was firmly established at the time of Individual Defendants' alleged misconduct, as Substantive Due Process failure to protect. *See,e.g., Bistrian v. Levi,* 696 F. 3d 352, 364-65 (3d Cir. 2012) (failure to protect convicted prisoner from harm from other prisoners). As that case teaches, even under a deliberate indifference standard, qualified immunity may not apply where "[a] plaintiff can … prove an official's actual knowledge of a substantial risk to his safety 'in the usual ways, including inference from circumstantial evidence.' *Farmer,* 11 U.S. at 842…In other words, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.*" *Bistrian,* 696 F. 3d at 367. *Cf. Smith, supra* (defective condition of furnishings in Dirksen Courthouse, for whose safety USMS responsible, gave rise to *res ipsa loquitur* inference.) On the pleadings herein, Plaintiff alleges a violation of the constitutional right to be protected from substantial risks to his safety.

## CONCLUSION

Wherefore, for the reasons set forth above, Individual Defendants' Motion to Dismiss should be denied, with leave to replead to conform with Plaintiff's status as pretrial detainee.

15

DATED:  September 20, 2021

                                        Respectfully submitted,

                                        */s/ Elaine K.B. Siegel*

OF COUNSEL:

Elaine K.B. Siegel
Bridget O. Marks
ELAINE K.B. SIEGEL & ASSOC., P.C.
P.O. Box 6486
Evanston, Illinois 60204
Tel: (312) 339-8088
Email: ekbsiegel@aol.com
Atty. No. 6183905

## **CERTIFICATE OF SERVICE**

I, Elaine K.B. Siegel, an attorney representing the Plaintiff, hereby certify that I caused the foregoing *Memorandum of Plaintiff Javier Gonzalez-Loza in Opposition to Defendants' Motion to Dismiss* to be served, via CM/ECF and electronic mail, to the Counsel named below, on September 20, 2021:

> United States Attorney's Office (NDIL - Chicago)
> 219 South Dearborn Street
> Chicago, IL 60604
> USAILN.ECFAUSA@usdoj.gov
>
> Sarah J. North
> U.S. Attorney's Office, Northern District of Illinois
> 219 S. Dearborn Street
> Suite 500
> Chicago, IL 60604
> sarah.north@usdoj.gov

> /s/ *Elaine K.B. Siegel*