IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAVIER GONZALEZ-LOZA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 19 C 3046 |
| COUNTY OF KANKAKEE, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Javier Gonzalez-Loza has sued Lorne K. Stenson and Marlon Burton, a current and former United States Deputy Marshal, along with other defendants, for violations of his constitutional rights in connection with injuries he suffered at the Dirksen Federal Courthouse on July 17, 2018.[1] The other defendants—Kankakee County, its Sheriff, and several Kankakee Sheriff's police officers, who are sued under 42 U.S.C. § 1983—have answered Gonzalez-Loza's complaint. Stenson and Burton (the federal defendants) have moved to dismiss, arguing that (1) Gonzalez-Loza's claims are time-barred; (2) no *Bivens* remedy is available for the alleged wrong; (3) the complaint fails to plead a Fifth Amendment violation; and (4) qualified immunity bars the suit. On August 24, 2021, this Court overruled the federal defendants' statute of limitations argument but ordered briefing on the remaining issues. Dkt. no. 95. Having

---

[1] Gonzalez-Loza has separately sued the United States under the Federal Tort Claims Act for the same injuries. *See Gonzalez-Loza v. United States*, Case No. 21 C 3607.

reviewed the parties' briefs, the Court grants the federal defendants' motion to dismiss the claims against them.

## Background

The federal defendants' motion concerns Gonzalez-Loza's fourth amended complaint (the complaint), which asserts claims against several Kankakee County-related defendants and the federal defendants (including several unnamed "John Doe" defendants) for excessive force that he alleges caused his fall down a set of stairs in the Dirksen Courthouse. Gonzalez-Loza seeks relief against the federal defendants under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of his constitutional rights.

Gonzalez-Loza alleges that, on July 17, 2018, he and other detainees were transported to the Dirksen Courthouse for hearings. On that day, the typical elevator used to transport detainees was out of service, so the federal defendants escorted him and the other detainees "up concrete stairs that led to a freight elevator used to bring the prisoners to the holding cell to wait for court hearings." Fourth Am. Compl. ¶ 20. According to the complaint, the federal defendants and others escorted Gonzalez-Loza and the other detainees out of the courthouse using the same path, i.e., down the freight elevator and concrete stairs. Gonzalez-Loza alleges that he was "fully shackled, handcuffed, and black-boxed" and that the "concrete stairs had a metal edging in defective condition, and lacked walls or other safeguards to buffer against falls by the prisoners." *Id.* ¶¶ 22–23. He further states that the defendants involved in escorting him out of the courthouse "were deliberately indifferent to the danger, and did nothing to abate the danger in order to protect the vulnerable prisoners from the obvious and

2

notorious dangers on their way to and from their hearings in the courthouse." *Id.* ¶ 24.

Gonzalez-Loza alleges that, while he was walking down the stairs on the way to the vehicle that would be used to transport him back to Kankakee County, "the chain on [his] ankle shackles got caught on a piece of metal trim protruding from the stair." *Id.* ¶ 25. Because of the restraints on his arms and legs, he was unable to catch himself from falling and "fell headlong down the concrete stairs." *Id.* He alleges that he "screamed in pain" and "heard a cracking sound in his back." *Id.* ¶ 26.

The complaint further states that "[o]ne or more Individual USMS Defendants asked Gonzalez-Loza whether he was okay," and he answered no. *Id.* ¶ 27. Although he asked the defendants, including two Kankakee Sheriff's officers, not to pick him up, "[o]ne or more Individual USMS Defendants picked him up anyway, by his arms." *Id.* Gonzalez-Loza alleges that "[o]ne or more Individual U.S. Marshals mocked" him. *Id.* ¶ 29. He also alleges that other detainees told the two transporting Kankakee officers that he needed to go to a hospital for medical treatment, but that the officers ignored these pleas, even after he began vomiting. *Id.* ¶¶ 31–32.

On August 19, 2021, the federal defendants moved to dismiss the complaint for four reasons: (1) the claims are barred by the statute of limitations; (2) there is no *Bivens* remedy for Gonzalez-Loza's claims; (3) the allegations fail to state a Fifth Amendment violation; and (4) qualified immunity bars the suit. On August 24, 2021, the Court overruled the first argument but ordered briefing on the remaining issues. In his response brief, Gonzalez-Loza asked the Court for leave to amend his complaint to allege violations of his due process rights under the Fifth Amendment rather than violations of the cruel and unusual punishment clause of the Eighth Amendment,

because he was a pretrial detainee at the time of the incident. The defendants maintain that amendment would be futile and that Count 7 should be dismissed with prejudice.

## Discussion

The defendants have moved to dismiss Gonzalez-Loza's *Bivens* claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss the complaint must 'state a claim for relief that is plausible on its face.'" *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When deciding a motion to dismiss, the court must view the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Before turning to Gonzalez-Loza's *Bivens* claims, the Court first grants him leave to amend the complaint to assert claims under the Fifth Amendment. Because he was a pretrial detainee at the time of the fall, he is protected under the Fifth Amendment, rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 561 (1979). This does not change the Court's analysis of the *Bivens* issue. Thus the Court has not requested any additional briefing based on the change.

In 1971, the Supreme Court recognized an implied damages remedy against federal officers who violated the Fourth Amendment's prohibition against unreasonable

4

searches and seizures.  *Bivens*, 403 U.S. at 397.  The Supreme Court subsequently extended *Bivens* to provide an implied damages remedy for a Fifth Amendment gender discrimination claim, *Davis v. Passman*, 442 U.S. 228, 234 (1979), and an Eighth Amendment claim for inadequate medical treatment, *Carlson v. Green*, 446 U.S. 14, 16–17 (1980).  Since *Carlson* was decided in 1980, however, the Court has not extended the *Bivens* remedy any further.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 739 (2020).  The Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675).

Before a court extends the *Bivens* remedy to a new cause of action, it must engage in a two-step inquiry.  First, the court must determine whether the claim "arises in a 'new context' or involves a 'new category of defendants.'"  *Hernandez*, 140 S. Ct. at 743 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  A context is new if it is "different in a meaningful way from previous *Bivens* cases decided by this Court."  *Id.* (quoting *Abassi*, 137 S. Ct. at 1859).  Second, if the court determines that the claim arises in a new context, it must "ask whether there are any special factors [that] counsel[l] hesitation about granting the extension."  *Id.* (quoting *Abassi*, 137 S. Ct. at 1857) (internal quotation marks omitted).

The first question is whether Gonzalez-Loza's claim arises in a new context.  As previously stated, Gonzalez-Loza alleges a violation of his Fifth Amendment due process rights.  The Supreme Court recognized a *Bivens* remedy for a Fifth Amendment violation in *Davis*, 442 U.S. at 234, but that case did not involve the mistreatment of a pretrial detainee like Gonzalez-Loza.  "[A] claim may arise in a new context even if it is

based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Thus the question is whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S. Ct. at 1864.

This case differs in a meaningful way from *Davis* because that case involved an allegation of employment-related sex discrimination, whereas this case involves an allegation of excessive force against a detained person. And although Gonzalez-Loza argues that the Seventh Circuit "allows *Bivens* claims under the Fifth Amendment for violations for procedural and substantive due process," none of the cases he cites involve allegations of excessive force. Pl.'s Resp. Br. at 7. Additionally, this case differs in a meaningful way from *Bivens*, 403 U.S. at 397, and *Carlson*, 446 U.S. at 16–17, because those cases involved alleged violations of the Fourth and Eighth Amendments. "[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right." *Abbasi*, 137 S. Ct. at 1864.

Because Gonzalez-Loza asks the Court to extend *Bivens* to a new context, the Court must determine whether there are any "special factors" that weigh against granting the extension. One such factor is the fact that Gonzalez-Loza has an alternative remedy under the Federal Tort Claims Act (FTCA). *See id.* at 1858 ("If there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). In a separately filed case, he has sued the United States under the FTCA for negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and battery. *See generally* Case No. 21 C 3607, dkt. no. 1. He alleges that "[a]s a direct and

6

proximate result of one or more of the foregoing negligent acts or omissions," he sustained several injuries, including acute and chronic pain, a concussion, abrasions and contusions, and chronic severe headaches. *Id.* ¶¶ 47, 73, 86. He also alleges, with respect to the intentional infliction of emotional distress claim, that he sustained "mental anguish." *Id.* ¶ 60.

Gonzalez-Loza disputes the contention that the FTCA is an alternative remedy for his *Bivens* claims. He states that there are "distinction[s] in facts and law comprising Plaintiff's parallel claims of *Bivens* and the FTCA," such that refusing to extend *Bivens* because of his FTCA claim "would produce unfair results by precluding potentially meritorious claims if Plaintiff's FTCA claims failed for unrelated reasons." Pl.'s Resp. Br. at 12. Contrary to Gonzalez-Loza's contentions, however, his FTCA claims are based on the same alleged conduct as his *Bivens* claims. Specifically, the FTCA claims are premised on allegations that the defendants forced him to wear excessive restraints while walking down cement stairs, failed to assist him while he was walking down the stairs, and failed to prevent him from falling down the concrete stairs. *Id.* ¶¶ 11–35. These are almost exactly the same allegations that Gonzalez-Loza makes with respect to his *Bivens* claims.

Gonzalez-Loza also argues that the FTCA is not an adequate alternative because "an FTCA claim is 'not a substitute for a *Bivens* action.'" Pl.'s Surreply at 6 (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). But the Supreme Court has made it clear that alternative remedies "need not be perfectly congruent" to preclude a *Bivens* remedy. *Minneci v. Pollard*, 565 U.S. 118, 129 (2012). In *Malesko*, the Court stated that "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of

7

separation of powers foreclosed judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69. In other words, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863. That is the case here.

### Conclusion

For the foregoing reasons, the Court grants the federal defendants' motion to dismiss the claims against them with prejudice [dkt. no. 94] and therefore dismisses plaintiff's claims against defendants Stenson, Burton, and any federal "John Does."

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 7, 2021